```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON
```

**GEORGE A. THOMAS,**

    **Plaintiff,**

**v.**                                       **CASE NO. 2:10-cv-00766**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Both parties have consented in writing to a decision by the United States Magistrate Judge. Currently pending before the court is Plaintiff's Motion for Summary Judgment.[1]

Plaintiff, George Allen Thomas (hereinafter referred to as "Claimant"), filed an application for DIB on December 4, 2008, alleging disability as of November 13, 2008, due to visual impairments, arthritis, dizziness, numbness in the arms and legs

---

[1] The court reminds Plaintiff that pursuant to Local Rule of Civil Procedure 9.4(a), the parties need not file motions in support of judgment on the pleadings or motions for summary judgment. Instead, Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision." Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

and a heart condition. (Tr. at 95-98, 129, 207.) The claim was denied initially and upon reconsideration. (Tr. at 48-52, 55-57.) On April 2, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 58.) The hearing was held on July 14, 2009, before the Honorable Theodore Burock. (Tr. at 20-42.) By decision dated September 28, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9-19.) The ALJ's decision became the final decision of the Commissioner on April 27, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-3.) On May 24, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently

engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2009).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant

satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 11.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of visual impairment, hypertension, neck impairment, knee impairment and headaches. (Tr. at 11.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 14.) As a result, Claimant cannot return to his past relevant work. (Tr. at 17.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as janitor, kitchen helper, stock clerk, assembly worker, office helper and laundry folder, which exist in significant numbers in the national economy. (Tr. at 18.) On this basis, benefits were denied. (Tr. at 19.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

4

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was fifty-two years old at the time of the administrative hearing. (Tr. at 24.) Claimant completed the ninth grade. (Tr. at 25.) In the past, he worked as a dump truck driver. (Tr. at 34.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

A substantial amount of the evidence of record predates Claimant's alleged onset of disability on November 13, 2008, but the court will summarize it for background purposes.

On February 19, 2007, Claimant failed a pre-employment stress test and reported to the hospital with complaints of tightening in

his mid chest. Claimant was to undergo left heart catheterization. (Tr. at 311-12.) The catheterization revealed significant 3 vessel coronary artery disease, and Claimant underwent coronary artery bypass grafting x6 on February 21, 2007. (Tr. at 230.) On March 26, 2007, Claimant was doing well. (Tr. at 314.)

On February 19, 2007, Stafford G. Warren, M.D. noted that Claimant questioned whether he might have significant left renal artery stenosis or whether there was an overlying of overlapping of vessels. Dr. Warren planned to order a renal duplex after Claimant's coronary bypass surgery. (Tr. at 324.) Dr. Warren ordered a scan and other tests on May 10, 2007. (Tr. at 323.)

An exercise stress test on May 10, 2007, showed normal rest and stress SPECT Sestamibi study and normal wall motion analysis with ejection fraction of 58 percent. (Tr. at 327.) A renal artery duplex on May 10, 2007, showed less than 60 percent stenosis, mild to moderate stenosis of the right and left renal arteries. (Tr. at 332.)

On May 25, 2007, Dr. Warren released Claimant to return to work without restrictions effective immediately. (Tr. at 328.)

On May 31, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform heavy work with an ability to stand and/or walk six hours in an eight-hour workday and sit about six hours in an eight-hour workday and a need to avoid concentrated exposure to

extreme cold. (Tr. at 342-49.)

The record includes treatment notes and other evidence from J. Stephen Shank, M.D. dated February 27, 2006, through September 17, 2008. (Tr. at 352-402.) An MRI of the cervical spine on February 27, 2006, showed cervical spondylosis with posterior osteophytes causing effacement of the thecal sac at C3-4, C5-6 and C6-7, no focal disc herniation and no exit foramina stenosis. (Tr. at 401.) Also, Claimant was treated for hypertension, hyperlipidemia, osteoarthritis, obesity and coronary artery disease, among others.

On September 26, 2007, Robert F. Dundervill, III, M.D., F.A.C.S. examined Claimant. His impression was central retinal vein occlusion with neovascularization of the iris-right eye. He indicated that Claimant was at a substantial risk for developing neovascular glaucoma and blindness. He recommended Avastin injections. (Tr. at 410.) On October 24, 2007, Claimant reported some improvement following an Avastin injection. (Tr. at 414.) The record includes additional treatment notes from Dr. Dundervill. (Tr. at 412-34.)

On July 2, 2008, Dr. Dundervill wrote that Claimant has a history of central retinal vein occlusion in the right eye, which has limited the vision in that eye to counting fingers at 1 foot. Claimant's vision continued "to be good at 20/20 in the left eye, and with the 20/20 vision in the left eye he should be able to operate a motor vehicle for private use without restriction." (Tr.

at 430.)

On February 9, 2009, Miraflor G. Khorshad, M.D. examined Claimant at the request of the State disability determination service. Dr. Khorshad diagnosed essential hypertension, poorly controlled and clinical history of dizzy spells secondary to essential hypertension. (Tr. at 405.)

On February 16, 2009, a State agency medical source completed a Physical Residual Functional Capacity Assessment and limited Claimant to medium work, with an occasional ability to climb ladders, ropes and scaffolds. (Tr. at 435-42.) This opinion was affirmed by a second State agency medical source on March 21, 2009. (Tr. at 444.)

On February 18, 2009, Dr. Dundervill wrote that Claimant is "legally blind in the right eye because of a central retinal vein occlusion and will remain that way without hopes of improvement in the future." (Tr. at 485.)

On June 12, 2009, Claimant underwent a stress test, which was "essentially unremarkable." (Tr. at 446.)

The record includes additional treatment notes from Dr. Shank dated July 9, 2007, November 12, 2007, January 21, 2008, March 17, 2008, June 17, 2008, September 17, 2008, May 7, 2009, June 8, 2009, and June 30, 2009. (Tr. at 457-84.) On May 7, 2009, Dr. Shank diagnosed essential hypertension, hyperlipidemia and coronary artery disease. Dr. Shank noted that Claimant was told to apply

for disability because he would never drive again. (Tr. at 467-68.) On June 8, 2009, Dr. Shank's assessment was essential hypertension, hyperlipidemia, obesity and coronary artery disease. He noted that Claimant's blood pressure was fairly well controlled on his current medication and that Claimant's mixed lipid levels and had been fairly well controlled on medication as well. Claimant also had a history of stable three vessel disease. (Tr. at 465-66.) On June 30, 2009, Claimant complained of abdominal pain. He was diagnosed with abdominal pain and cholelithiasis. (Tr. at 458.)

On June 30, 2009, Dr. Shank completed a "Physical (Adult)" on which he opined that Claimant was blind in the right eye, had coronary artery disease, increased lipids, retinal hemorrhage, hypertension and an inguinal hernia, among other things, and that he was unable to work. (Tr. at 461-62.)

An ultrasound of Claimant's gallbladder on July 10, 2009, was normal. (Tr. at 486.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in finding Claimant capable of medium level work because he failed to properly evaluate the combined effect of all of Claimant's impairments, including obesity; (2) the ALJ erred in assessing Claimant's subjective complaints of pain; and (3) the ALJ erred in

9

failing to afford sufficient weight to the opinion of Claimant's treating physician. (Pl.'s Br. at 5-9.)

The Commissioner argues that (1) the ALJ properly considered the combined effect of Claimant's impairments, including obesity; (2) the ALJ properly gave little weight to the opinion of Dr. Shank, Claimant's treating physician; and (3) the ALJ properly evaluated the credibility of Claimant's subjective complaints. (Def.'s Br. at 8-18.)

The court finds that the ALJ properly considered Claimant's impairments alone and in combination in keeping with the applicable regulation and Social Security Ruling ("SSR") 02-01p related to obesity. See 20 C.F.R. § 404.1523 (2009) and SSR 02-01p, 2000 WL 628049, at *1 (September 12, 2002).

The social security regulations provide,

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 404.1523 (2009). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974).

The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

SSR 02-01p explains that certain provisions of the listings instruct ALJs to "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." SSR 02-01p, 2000 WL 628049, at *1 (September 12, 2002).

At the outset, Claimant mischaracterizes testimony at the administrative hearing from the vocational expert. Claimant states that

> [w]hen asked at hearing if there were jobs a person could perform at medium non-exertional level with these limitations [medium work but limited to routine, repetitive tasks involving no climbing ladders, ropes or scaffolds and avoiding exposure to all hazards and no jobs requiring binocular vision], the Vocational Expert stated "Yes sir, from a technical standpoint, yes you can, even though it's not vocationally recommended because of the vision. It's not classified as hazardous equipment, but there are hazards involved, yeah. They're right, it's problematic. You know, like I said technically it doesn't preclude it, however, from [a] vocational standpoint it's, it's not anything that I would recommend because the danger involved in completing the task."

(Pl.'s Br. at 6-7.)

11

In fact, the ALJ asked the vocational expert if, with the limitations of medium work and the nonexertional limitations cited above, Claimant could return to his *past relevant work*. In response, the vocational expert responded "yes sir, from a technical standpoint, yes you can [return to past relevant work], even though it's not vocationally recommended because of the vision." (Tr. at 35.) The ALJ did not find that Claimant could return to his past relevant work. Instead, he found Claimant capable of other work. Specifically, the vocational expert identified a significant number of medium and light jobs that Claimant could perform given these limitations, including those related to his vision. (Tr. at 36.)

Turning to Claimant's substantive arguments, Claimant first argues that the ALJ erred in finding he could perform medium and light jobs and that instead, when his impairments are considered in combination, substantial evidence supports a finding that he can perform only sedentary work. If Claimant is found capable of only sedentary work, the vocational expert could identify no jobs. (Tr. at 37.) In particular, Claimant argues that the ALJ failed to consider Claimant's obesity. (Pl.'s Br. at 7.)

The court finds that the ALJ's decision reflects a careful consideration of Claimant's impairments, both alone and in combination. The ALJ considered the combined effect of Claimant's impairments in determining their severity and in arriving at a

residual functional capacity finding. Regarding Claimant's obesity, the ALJ declined to find this impairment severe (Tr. at 13), but he provided sufficient explanation for doing so. Claimant was 5'9'' and weighed between 214 and 233 pounds. Despite Claimant's obesity, the ALJ observed that he was able to sit, squat and walk on his heels, and toes. (Tr. at 404.) Although the ALJ did not find Claimant's obesity to be severe, he considered it in assessing Claimant's subjective complaints of pain. (Tr. at 15.) The ALJ's decision reflects a careful consideration of Claimant's impairments alone and in combination, and he properly considered Claimant's obesity and made findings in that regard that are supported by substantial evidence.

Next, Claimant argues that the ALJ failed to make proper findings about Claimant's pain, including a finding about whether there was an objective basis for Claimant's pain. Claimant also argues that the ALJ failed to consider the intensity and severity of Claimant's pain. (Pl.'s Br. at 7-9.)

The ALJ's pain and credibility findings are consistent with the applicable regulation, case law and SSR and are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2009); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). Contrary to Claimant's assertion, the ALJ found that Claimant had "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms ...." (Tr. at

13

15.)

The ALJ proceeded to the second step in the pain analysis and his decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 15-16.) The ALJ considered the intensity and severity of Claimant's pain. He noted that Claimant had dull chest pain at times and tightness in his chest, that Claimant's neck hurts all the time, that his right knee "comes and goes" when he walks and that he has headaches "about all of the time and are off and on at times." (Tr. at 15.)

The ALJ ultimately concluded that Claimant was not credible based on the medical evidence of record, the fact that Claimant's conditions are well controlled with medication, that Claimant has no side effects from medication and that Claimant has made inconsistent statements about his education. (Tr. at 16-17.) The ALJ's findings in this regard are supported by substantial evidence.

Finally, Claimant argues that the ALJ erred in failing to afford controlling weight to the opinion of Dr. Shank, who opined that Claimant was disabled. (Pl.'s Br. at 9.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to

provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2) (2009). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2009). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) (2009). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6)

15

various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 404.1527(d)(2)(i) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

In his decision, the ALJ acknowledged Dr. Shank's June 30, 2009, opinion, but found that it was "without substantial support from the other evidence of record, which obviously renders it less persuasive. Therefore, the undersigned gives little weight to Dr. Shank's opinion." (Tr. at 17.)

The court finds that the ALJ properly weighed the evidence of record from Dr. Shank. Dr. Shank's assessment on which he opined that Claimant was disabled is conclusory and not supported by objective medical evidence within the assessment itself or Dr. Shank's treatment notes. In fact, Dr. Shank's treatment notes indicate that Claimant's conditions were managed with medication. Furthermore, the remaining medical evidence of record from the State agency medical sources, Dr. Warren (who released Claimant to work) and Dr. Khorshad do not support a finding of disability.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is DENIED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: July 6, 2011

Mary E. Stanley
United States Magistrate Judge

17